UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

TRENSARIO MARIO HOOD,

           Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

           Defendants.
_____/

Case No. 1:24-cv-425

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26).

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC and MCF, as well as MDOC Director Heidi Washington, CFA Director Jeremy Bush, and Deputy Director Cindy Dodds-Dugan. Plaintiff also sues the following named MCF employees: Warden James Schiebner, Deputy Warden Jeanine Winger, Assistant Deputy Warden J. Kludy, retired Business

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Manager Unknown Moradi, Business Manager P. Benson, A/AA Unknown McLaughlin, and Food Service Director C. Ward.

Finally, Plaintiff names Unknown Parties #1–#13, referred to as: (1) Unknown Food Service Workers; (2) any and all sub-contracted on-site maintenance personnel; (3) any and all MDOC corrections supervisors; (4) any and all corrections officers present during the incident; (5) any and all medical staff and sub-contracted medical staff; (6) medical providers and any and all owners, supervisors, trainers, and duty assignment personnel; (7) any additional individuals currently employed by or sub-contracted to the MDOC; (8) any and all previous MDOC and sub-contracted employees; (9) the unknown company providing food service workers; (10) the unknown company and its owner and management who designed and developed the dining hall tables; (11) the unknown company and/or people responsible for installation of the dining hall tables; (12) any and all unknown service/repair technicians and companies; and (13) any and all unknown people "providing a safe, hazard-free living environment for all Michigan prisoners." (Compl., ECF No. 1, PageID.2–4.)

Plaintiff alleges that on September 21, 2023, he went to the MCF dining hall, scanned his ID card, and then proceeded through the line to collect his meal. (*Id.*, PageID.9.) Plaintiff sat at a table with another inmate, James Edward Walker. (*Id.*) Plaintiff avers that while he and inmate Walker were eating, their table "came detached from the floor with enough force" that Plaintiff "was propelled off [his] seat to such extent that [he] came down landing on [his] back." (*Id.*) Plaintiff claims that he was unable to move or do anything to lessen the impact because of the "unexpected force." (*Id.*) The table settled on inmate Walker, "cutting his leg and pinning him to the floor." (*Id.*) Plaintiff believes that either the sudden jerking or twisting of his body or the landing "caused so much pain." (*Id.*)

4

Plaintiff and inmate Walker were escorted to the medical department for treatment. (*Id.*) Plaintiff contends that he suffered the following injuries: (1) back pain from the "sudden, unexpected jerking and twisting of [his] body, and then landing [across his] back"; and (2) extreme back, neck, and shoulder pain. (*Id.*, PageID.10.) Plaintiff claims that he is unable to maintain an active lifestyle and experiences "excruciating pain getting in and out of bed." (*Id.*)

Plaintiff claims that he subsequently learned that the MDOC and MCF, as well as administrative personnel "either had existing knowledge, or should have known[,] of the potential dangers that may be caused by the table." (*Id.*, PageID.11.) According to Plaintiff, on August 11, 2023, Defendant Ward sent a memorandum to Defendants Benson and McLaughlin. (*Id.*) Plaintiff has attached a copy of this memorandum to his complaint. The memorandum concerned the food service committee agenda. (ECF No. 1-2, PageID.33–34.) This document reflects that inmates Frye and McMahen, who are part of the committee, asked "that a work order be put in to inspect ALL dining room seats for safety issues, to avoid the recent incident from happening again." (*Id.*, PageID.34.) The agenda notes that MCF staff were "in the process of replacing al[l] the old tables." (*Id.*, PageID.33.) Plaintiff contends that this document establishes pre-existing knowledge of the dangers that the dining hall tables posed to the MCF inmate population. (Compl., ECF No. 1, PageID.12.)

Plaintiff goes on to state that as of March 22, 2024, there were still "old tables" in the MCF dining hall, with tables that are "missing more than one seat." (*Id.*, PageID.13.) Plaintiff alleges that instead of replacing the tables by now, MCF staff have "performed 'unrelated work,'" including tree removal, relocation of prisoner phones, installation of a basketball court, and roof repairs. (*Id.*, PageID.13–14.)

Plaintiff then alleges that he "has been unable to convince the medical staff . . . that he is in need of appropriate treatment and care." (*Id.*, PageID.14–15.) He faults medical staff for not providing him with an appropriate detail, as well as a CAT scan. (*Id.*, PageID.15.) Plaintiff avers that he "has been unable to continue his accustomed lifestyle because of the great deal of pain being suffered." (*Id.*)

Based on the foregoing, Plaintiff asserts Eighth Amendment claims for unconstitutional conditions of confinement as well as failure to provide adequate medical care. Plaintiff also faults Defendants for failing to establish or enforce numerous policy directives providing for hazard-free living conditions for MDOC inmates, including directives mandating that only high-volume usage dining room tables be installed, directives that follow-ups be conducted with inmates who are injured on correctional properties because of safety hazards, policies providing for adequate medical care, directives providing for routine supervision, and policies regarding issuance of official reports to the MDOC's insurance providers. (*Id.*, PageID.16–24.) Plaintiff also appears to set forth negligence claims against Defendants.

As relief, Plaintiff seeks the appointment of counsel. (*Id.*, PageID.26.) He also asks for injunctive relief in the form of an order directing Defendants to immediately address safety hazards and have all repairs and replacements professionally inspected, as well as an order directing Defendants to raise the standard of medical care. (*Id.*) Additionally, Plaintiff seeks damages. (*Id.*, PageID.26–27.)

## II.   Request for Appointment of Counsel

As noted *supra*, Plaintiff has requested the appointment of counsel. (*Id.*, PageID.26.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel,

6

in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26) will, therefore, be denied.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### 1. Claims against Defendants MDOC and MCF

As noted above, Plaintiff has named the MDOC and MCF itself as Defendants. However, as explained below, Plaintiff may not maintain a Section 1983 action against the MDOC and MCF itself.

As an initial matter, MCF is not a separate entity capable of being sued. *See, e.g.*, *Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934, at *7 (W.D. Mich. Oct. 28, 2013) (discussing that "individual prisons named as Defendants . . . (ICF, IBC, LRF and RGC) are buildings used by the MDOC to house prisoners," and "[t]hey are not the proper public entity for suit"); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at *1 (E.D. Mich. Sept. 11. 2009) ("Plaintiff names the Michigan Reformatory, the Earnest C. Brooks Correctional Facility, and the Macomb Correctional Facility as defendants in this action. Those entities, however, are institutions operated by the MDOC and are not . . . legal entities subject to suit. . . ."). Moreover, the State of Michigan (acting through the MDOC) and MCF are not "persons" who

8

may be sued under Section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006).

In any event, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison*, 722 F.3d at 771; *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Accordingly, for all the reasons set forth above, Plaintiff's claims against the MDOC and MCF will be dismissed.

> **2. Claims against Defendants Washington, Bush, Dodds-Dugan, Scheibner, Winger, Kludy, Moradi, and Unknown Parties #1, #2, #3, #4, #7, #8, #9, #10, #11, #12, and #13**

As to the above-listed Defendants, Plaintiff alleges in a conclusory fashion that they violated his Eighth Amendment rights by failing to provide safe conditions of confinement and adequate medical care, and that they failed to enact or enforce numerous policy directives providing for the same. Plaintiff, however, does not mention any of these individuals or groups of individuals by name in his complaint; instead, he refers to "them," "they," and "Defendants"

9

throughout. The only Defendants that Plaintiff mentions by name are Defendants Ward, Benson, and McLaughlin, as well as the MDOC and MCF.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Additionally, any "[s]ummary reference to a single, [multi]-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted).

In this action, Plaintiff fails to present any *facts* against the above-listed Defendants and fails to allege *facts* showing how each of them were personally involved in the alleged violations of Plaintiff's constitutional rights. Instead, Plaintiff presents conclusory allegations of alleged wrongdoing and suggests that the above-listed Defendants were involved in some unspecified way. To state a claim upon which relief may be granted, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. With respect to Defendants Washington, Bush, Dodds-Dugan, Scheibner, Winger, Kludy, Moradi, and Unknown Parties #1, #2, #3, #4, #7, #8, #9, #10, #11, #12, and #13, Plaintiff's allegations do not satisfy this pleading standard. *See Boxill*, 935 F.3d at 518; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). For that reason alone, Plaintiff's claims against these Defendants are subject to dismissal.

Plaintiff may also have named these individuals and groups of individuals as Defendants because of their various respective supervisory positions. Government officials, however, may not

10

be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that any of the above-listed Defendants encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Indeed, as discussed above, Plaintiff's complaint is devoid of facts suggesting that any of these individuals were aware of the condition of the dining room table at issue or Plaintiff's need for more medical care. Because Plaintiff has failed to allege that these

11

Defendants engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Accordingly, for the reasons set forth above, Plaintiff's claims against Defendants Washington, Bush, Dodds-Dugan, Scheibner, Winger, Kludy, Moradi, and Unknown Parties #1, #2, #3, #4, #7, #8, #9, #10, #11, #12, and #13 will be dismissed.

### 3. Eighth Amendment Claims against Remaining Defendants Benson, McLaughlin, Ward, and Unknown Parties #5 and #6

Plaintiff contends that his Eighth Amendment rights were violated because the dining hall table presented an unconstitutional condition of confinement. He also contends that his Eighth Amendment rights were violated because he did not receive adequate medical attention when the dining hall table came detached, launching Plaintiff from his seat and causing him to land on his back.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong,

12

an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837.

Plaintiff contends that his Eighth Amendment rights were violated because the dining hall table presented an unconstitutional condition of confinement. He also contends that his Eighth Amendment rights were violated because he did not receive adequate medical attention after the incident. The Court addresses each Eighth Amendment claim in turn below.

### a. Conditions of Confinement

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

While the Court is sympathetic to the fact that Plaintiff was injured when the dining hall table came detached and fell on him, Plaintiff's allegations do not suffice to rise to the level of an Eighth Amendment violation. Overall, Plaintiff's claim is akin to a slip-and-fall case. "[F]ederal courts have nearly unanimously held that a slip and fall, without more, does not amount to cruel and unusual punishment." *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) (citation and

quotation omitted); *see White v. Tyszkiewicz*, 27 F. App'x 314, 315 (6th Cir. 2001); *Nali v. Michigan Dep't. of Corr.*, No. 2:07-cv-255, 2009 WL 3052227, at *6 (W.D. Mich. Sept. 21, 2009) ("[W]hile an icy prison yard walkway presents the possibility for an inmate to slip and fall, it does not pose a substantial or excessive risk of serious harm."). "[C]ourts have occasionally found that a slip-and-fall case that has additional exacerbating factors can create a plausible allegation of constitutional harm." *Lamb*, 677 F. App'x at 209 (citation omitted). For example, "where the plaintiff was disabled, had to use crutches, and had fallen many times due to slippery conditions in the shower, and prison officials were aware of all of these facts, the plaintiff could potentially state a deliberate-indifference claim." *Id.* (citing *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)).

Here, Plaintiff's complaint does not set forth additional exacerbating factors that rise to the level of a deliberate indifference claim. Certainly, a faulty or wrongly installed piece of furniture, such as the dining hall table, can constitute "a sufficiently serious risk" to an inmate's health or safety, particularly if the piece of furniture in question can become detached from the floor and fall on an individual. Plaintiff, however, has not alleged any facts from which the Court could infer that any of the named Defendants—particularly Defendants Benson, McLaughlin, Ward, and Unknown Parties #5 and #6—knew of and disregarded the risk posed by the table in question.

With respect to Unknown Parties #5 and #6, Plaintiff's complaint is devoid of any facts suggesting that any of the MCF medical staff knew about the defect in the dining room tables and disregarded that risk. Moreover, although Plaintiff vaguely references documented communication from Defendant Ward to Defendants Benson and McLaughlin, dated August 11, 2023, regarding the dining room tables, that documentation is insufficient for the Court to infer that Defendants Ward, Benson, and McLaughlin were aware of the risk posed by the dining hall table that fell onto

Plaintiff. As noted above, the documentation in question is a memorandum from the August 11, 2023, food service committee agenda meeting. (ECF No. 1-2, PageID.33–34.) This document reflects that inmates Frye and McMahen, who are part of the committee, asked "that a work order be put in to inspect ALL dining room seats for safety issues, to avoid the recent incident from happening again." (*Id.*, PageID.34.) The agenda notes that MCF staff were "in the process of replacing al[l] the old tables." (*Id.*, PageID.33.) Plaintiff, however, fails to provide any facts regarding the "recent incident" referenced in the memorandum. Simply referring to an incident that predated Plaintiff's accident is insufficient to show that Defendants Ward, Benson, and McLaughlin were aware of and disregarded an excessive risk to inmate health or safety. Moreover, the memorandum suggests that Defendants Ward, Benson, and McLaughlin were aware of the need for new dining hall tables and that staff at MCF were in the process of replacing all of the old tables. That not all of the tables were replaced by the date of Plaintiff's incident is not sufficient to show deliberate indifference to any risk of harm.

Again, while the Court is sympathetic to Plaintiff's accident, Plaintiff's allegations, at most, suggest nothing more than that Defendants Ward, Benson, and McLaughlin possibly were negligent in not replacing all of the dining hall tables sooner. However, allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment conditions of confinement claims will, therefore, be dismissed.

### b.  Denial of Adequate Medical Care

The Eighth Amendment is also violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). A claim for the deprivation of adequate medical

care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004)**;** *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

      Here, the Court assumes that the injuries Plaintiff sustained when the dining hall table fell on him are sufficiently serious to satisfy the objective component of the two-prong test. However, as to the subjective component, Plaintiff does not allege that Defendants Benson, McLaughlin, and Ward had any involvement in Plaintiff's receipt, or lack thereof, of medical care. Instead, Plaintiff vaguely states that "MCF Medical" has failed to provide adequate medical care, including an appropriate detail and a CAT scan. (Compl., ECF No. 1, PageID.15.) Plaintiff's general reference to "MCF Medical" is insufficient to state a claim for relief against any presently unknown staff member of the MCF medical department, all of whom appear to be encompassed by Plaintiff's naming of Unknown Parties #5 and #6. *See Boxill*, 935 F.3d at 518. Making allegations against all medical staff as a single amorphous group fails to set forth any cognizable claim for relief against any individual Defendant. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where the plaintiff failed to allege how any named defendant was involved in the violation of his rights).

16

Moreover, besides Plaintiff's conclusory statements that he has not received the appropriate detail and has not received a CAT scan, Plaintiff alleges no further facts explaining what treatment he is, or is not, receiving, and how the treatment he did receive immediately after the incident was not acceptable. In fact, Plaintiff provides no details at all about the treatment that he received after being escorted to the medical department immediately following the incident. Plaintiff alleges no facts suggesting that he requires a CAT scan, and while it is clear that Plaintiff would prefer to receive that diagnostic test, Plaintiff's "desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *See Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014); *see also Estelle*, 429 U.S. at 107 (noting that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment."). Plaintiff's conclusory assertions unsupported by any facts are insufficient to state a claim upon which relief may be granted. *See Twombly*, 550 U.S. at 555–61; *Iqbal*, 556 U.S. at 676.

Accordingly, because Plaintiff's conclusory allegations and reference to "MCF Medical" are insufficient to allege that any of the named Defendants were involved in Plaintiff's alleged receipt of inadequate medical care, Plaintiff's Eighth Amendment claims premised upon the lack of such care will be dismissed.

### B.  Violations of Policy Directives and State Law Claims

Plaintiff contends that Defendants failed to enact or abide by numerous policy directives regarding conditions of confinement and provision of medical care to inmates. Plaintiff's complaint also appears to suggest that Defendants acted negligently.

Claims under Section 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924

17

(1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580-81 & n.2 (6th Cir. 2007). Moreover, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated MDOC policy and procedures or state law, therefore, fail to raise cognizable federal constitutional claims.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state law claims, the Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction, and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Dismissal, however,

18

remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

The Court will deny Plaintiff's request for the appointment of counsel (ECF No. 1, PageID.26). Moreover, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated: May 15, 2024            /s/ Sally J. Berens
                               SALLY J. BERENS
                               United States Magistrate Judge

20